IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 22-0028 |
| | : | |
| JAMES GAUTHNEY | : | |
| *Defendant* | : | |

# ORDER

**AND NOW**, this 6th day of November 2023, upon consideration of Defendant's *motion to dismiss indictment*, (Doc. 55), and the Government's response in opposition, (Doc. 56), it is hereby **ORDERED** that the motion is **DENIED**.[1]

---

[1] Defendant James Gauthney ("Defendant") was charged in a one-count indictment, with knowingly possessing a loaded firearm that was in and affecting interstate commerce by a person previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1). (Doc. 8). At his arraignment hearing on February 1, 2022, Defendant was provided fourteen days to file pretrial motions. (*See* Doc. 11). Trial of this matter was initially scheduled for March 3, 2022, (Doc. 12), but has been rescheduled several times for various reasons. Currently, trial is scheduled for February 2, 2024.

On October 3, 2023, Defendant filed the instant motion to dismiss the indictment pursuant to Federal Rule of Criminal Procedure ("Rule") 12(b)(1). (Doc. 55). The United States of America (the "Government") opposes the motion. (*See* Doc. 56). Rule 12 governs pretrial criminal motion practice. Specifically, Rule 12(b)(1) provides, in general that, "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Such pretrial motions may include challenges to an indictment. *Id.* at 12(b)(3)(B). Rule 12(c)(1) provides that "the court may, at arraignment or as soon as practicable, set a deadline for the parties to make pretrial motions . . . ." *Id.* at 12(c)(1). "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely." *Id.* at 12(c)(3).

In addition, Local Rule of Criminal Procedure 12.1 requires all pretrial motions to be filed within fourteen (14) days of a defendant's arraignment, unless otherwise provided by the Court. L.C.R. 12.1. Here, Defendant filed his motion to dismiss the indictment nearly nineteen months after the deadline set by the Magistrate Judge on February 1, 2022. The motion to dismiss the indictment, therefore, is untimely, and on this ground alone, could be dismissed. Nevertheless, because Defendant relies on recent caselaw, this Court will address the merits of his motion.

Defendant argues that the one-count indictment should be dismissed because the statute under which he is charged, 18 U.S.C. § 922(g), is unconstitutional, as applied to him, under the Second Amendment to the United States Constitution. In support, Defendant relies on recent decisions of the Supreme Court of the United States (the "Supreme Court") in *New York State Rifle & Pistol Association, Inc. v. Bruen*, — U.S. —, 142 S. Ct. 2111 (2022), and the United States Court of Appeals for the Third Circuit (the "Third Circuit") in *Range v. United States*, 69 F.4th 96 (3d Cir. 2023) (*en banc*). Relying on

these recent decisions, Defendant argues that he is one of "the people" whose right to possess a firearm is protected by the Second Amendment and that the Government cannot show there is a longstanding history and tradition of depriving people like him from possessing firearms and, therefore, § 922(g) is unconstitutional as applied to him. In response, the Government argues, *inter alia*, that the Third Circuit's decision in *Range* is inapposite, that Defendant's challenge fails because he does not maintain that he possessed a firearm for a lawful purpose, and that the Government may bar a felon from possessing a firearm under the criteria outlined in *Bruen*.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. In the landmark *District of Columbia v. Heller* decision, the Supreme Court held that the Second Amendment protects an individual's right to keep and bear arms for "lawful purposes," including purposes unconnected to militia service. 554 U.S. 570 (2008). However, the Court expressly noted that "[l]ike most rights, the Second Amendment right is not unlimited," as it is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626.

As noted, Defendant relies on the recent holdings in the matters of *Bruen* and *Range*. However, his reliance on these cases is misplaced. In *Bruen*, the Supreme Court declined to adopt the two-step approach used by various courts of appeals to analyze Second Amendment challenges. 142 S. Ct. at 2127. The *Bruen* Court held, instead, that courts must look to whether "the Second Amendment's plain text covers an individual's conduct [such that] the Constitution presumptively protects that conduct." *Id.* at 2156. If so, the Government "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

In *Range*, the Third Circuit considered a civil action brought by Bryan Range seeking a declaration that 18 U.S.C. § 922(b)(1) violated the Second Amendment as applied to him, and an injunction prohibiting the law's enforcement against him. *Range*, 69 F.4th at 98-99. Range had pled guilty in 1995 to making a false statement to obtain food stamps in violation of Pennsylvania law—a single misdemeanor conviction which was punishable by up to five years' imprisonment. *Id.* at 98. This felony-equivalent conviction precluded Range from possessing a firearm pursuant to 18 U.S.C. § 922(g)(1). *Id.* When applying the principles of *Bruen*, the Third Circuit first answered in the affirmative the "threshold question" of whether Range was one of "the people" protected by the Second Amendment, reasoning that "the people" "refers to all members of the political community" and that the Second Amendment rights "presumptively 'belong[ ] to all Americans.'" *Id.* at 101 (quoting *Heller*, 554 U.S. at 580, 581). The Third Circuit then turned to the first step of the *Bruen* analysis—whether the Second Amendment's plain text covers the individual's conduct at issue—finding that § 922(g)(1) did regulate Range's request to possess a rifle to hunt and a shotgun to defend himself at home and therefore, the Second Amendment presumptively protected Range's conduct. *Id.* at 103.

Having determined that Range's conduct was protected by the Second Amendment, the Third Circuit then engaged in the next step dictated by *Bruen*—an analysis of whether the Government had affirmatively demonstrated that it was justified in "applying § 922(g)(1) to Range 'by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.'" *Id.* at 103. The Third Circuit rejected each of the Government's arguments, ultimately finding that "[b]ecause the Government has not shown that our Republic has a longstanding history and tradition of depriving people *like Range* of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights." *Id.* at 106 (emphasis added).

When considering Defendant's motion, this Court begins with the indisputable recognition that Defendant is in no way like the plaintiff in *Range*. In determining whether § 922(g)(1) was unconstitutional as applied to Range, the Third Circuit took into consideration the underlying conviction itself (making a false statement to obtain food stamps), the purported reason offered for Range's actions leading to his

2

conviction (he and his wife struggled to raise "three young children on $300 per week"), the age of the conviction (28 years old), Range's subsequent law-abiding lifestyle, and the reason Range now wanted the firearm (deer hunting and self-defense). *Id.* at 98-99. Unlike Range, who pled guilty to a single state law misdemeanor and who has not engaged in any criminal activity since, here, Defendant pled guilty in three separate cases to felony possession with intent to distribute, and conspiracy to possess with intent to distribute, in March of 2019. Whereas Range sold his deer-hunting rifle upon discovering that he was legally barred from having a firearm due to his 1995 conviction, *id.*, and there was no indication Range ever used his rifle or any other firearm to engage in any illegal activity, here, Defendant offers no legal purpose for his possession of the firearm. Defendant is charged and alleged to have possessed a SCCY, model CPX-3, .380 auto caliber semiautomatic pistol, loaded with seven live rounds of ammunition, including one in the chamber, when the car in which he was a passenger was pulled over for running a red light. The instant offense occurred while Defendant was on probation for his previous felony convictions. As such, no factual parallels can be drawn between Range and Defendant such that this Court could find that Defendant is like Range in any manner, aside from the general fact that they were both statutorily barred from possessing a firearm due to a prior qualifying criminal conviction—in Defendant's case, five prior felony convictions.

Notwithstanding, this Court will address Defendant's *as-applied* challenge and the legal principles of both *Bruen* and *Range.* As such, this Court must determine (1) whether Defendant "is one of 'the people' who have Second Amendment rights" and (2) whether "'the Second Amendment's plain text covers [Defendant's] conduct.'" *Id.* at 101, 103. If both questions are answered in the affirmative, this Court must then determine whether the Government has met its burden of showing that § 922(g)(1) is part of the historical tradition that limits the right to keep and bear arms. *Id.* at 103.

In *Range*, the Third Circuit majority held that "the people" in the constitutional text refers to all Americans and not only law-abiding persons. *Id.* at 101. Here, the Government does not dispute that under *Range*, Defendant is one of "the people" protected by the Second Amendment. (Doc. 68, at p. 8). This Court agrees that Defendant is one of "the people" protected by the Second Amendment under *Range*.

Having determined that, under *Range*, Defendant is one of "the people" protected by the Second Amendment, the next question is whether "'the Second Amendment's plain text covers [Defendant's] conduct,' and 'the Constitution presumptively protects that conduct.'" *Range*, 69 F.4th at 103 (quoting *Bruen*, 142 S. Ct. at 2126). In *Range*, the Third Circuit found that "Range's request—to possess a rifle to hunt and a shotgun to defend himself at home—tracks the constitutional right as defined by *Heller*." *Id*. Here, the Government contends that the Second Amendment does not apply to Defendant's conduct because he does not maintain that he possessed the firearm at issue for a *lawful* purpose. The Court need not address this argument, however, because, as discussed further below, the Government has affirmatively shown that § 922(g)(1) as applied to Defendant—a convicted felon—is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

The Supreme Court has repeatedly emphasized, in recent opinions interpreting the Second Amendment, that it does not cast doubt on presumptively lawful regulatory measures such as longstanding prohibitions on the possession of firearms by convicted felons. For example, in *Heller*, the Supreme Court specifically noted that "nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons" and such a prohibition is "presumptively lawful." 554 U.S. at 626-27 n.26. Similarly, two concurring opinions in *Bruen* reaffirmed the Supreme Court's statements in *Heller* that statutes making it unlawful for convicted felons to possess firearms are longstanding and presumptively lawful. *See Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) (noting that the decision does not "disturb[ ] anything that [the Court] said in *Heller* . . . about restrictions that may be imposed on the possession or carrying of guns"); *see also id.* at 2162 (Kavanaugh, J., concurring) (emphasizing that "the Second Amendment allows a 'variety' of gun regulations," and *Bruen* did not "cast

3

doubt on longstanding prohibitions on the possession of firearms by felons" (citation omitted)). Similarly, Judge Ambro's concurring opinion in *Range* explained that 18 U.S.C. § 922(g)(1):

> fits within our Nation's history and tradition of disarming those persons who legislatures believed would, if armed, pose a threat to the orderly functioning of society. That Range does not conceivably pose such a threat says nothing about those who do. And I join the majority opinion with the understanding that it speaks only to his situation, and not to those of murderers, thieves, sex offenders, domestic abusers, and the like.

*Range*, 69 F.4th at 110.

Considering this guidance by the Supreme Court, the majority and concurring opinions in *Range*, and the historical analogues cited in the Government's opposition, this Court finds that § 922(g)(1), as applied to Defendant, is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. In reaching this conclusion, this Court joins every other judge in this District to have addressed the issue. *See, e.g., United States v. Blackshear*, 2023 WL 5985284 (E.D. Pa. Sept. 14, 2023) (Pappert, J.) (finding that disarming those who committed dangerous felonies is within the historical tradition); *United States v. Ames*, 2023 WL 5538073 (E.D. Pa. Aug. 28, 2023) (Kenney, J.) (same); *United States v. Green*, Crim. A. No. 22-0387 (E.D. Pa. Sept. 21, 2023) (Diamond, J.) (same); *United States v. Pearson*, Crim. A. No. 22-0271 (E.D. Pa. Sept. 25, 2023) (Kearney, J.) (same); *United States v. Campbell*, Crim. A. No. 22-0394 (E.D. Pa. Sept. 28, 2023) (Surrick, J.) (same). Restricting the right of previously convicted felons to possess firearms "fits within our Nation's history and tradition of disarming those persons who legislatures believed would, if armed, pose a threat to the orderly functioning of society." *Range*, 69 F.4th at 110 (Ambro, J., concurring). This same concern is reflected in the case *sub judice*, where Defendant—previously convicted of three counts of felony possession with intent to distribute and two counts of conspiracy to possess with intent to distribute —was indicted for possessing a loaded semi-automatic firearm. As such, the Government has met its burden of showing that application of § 922(g)(1) to Defendant is constitutional. Accordingly, Defendant's motion to dismiss is denied.

Unlike the plaintiff in *Range*, Defendant also challenges the facial constitutionality of § 922(g). Facial challenges may be brought under the Second Amendment. *See City of L.A. v. Patel*, 576 U.S. 409, 416 (2015). "A party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir 2011) (*en banc*) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Thus, Defendant must show that § 922(g)(1) "'is unconstitutional in all of its applications.'" *Id.* (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)); *see also United States v. Marcavage*, 609 F.3d 264, 273 & n.5 (3d Cir. 2010). "The fact that [§ 922(g)(1)] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since" the Supreme Court has "not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *Salerno*, 481 U.S. at 745. As set forth above, Defendant has not shown that § 922(g)(1) is unconstitutional as applied to him. As such, he cannot meet and has not met his burden of showing that it is unconstitutional in all circumstances. Accordingly, Defendant's facial challenge fails.

Defendant also argues that § 922(g)(1) is void for vagueness because "[a]fter *Range*, § 922(g)(2) can no longer criminalize much of the conduct it purports to outlaw." (Def's Mot., Doc. 55, at p. 13). A criminal statute is impermissibly vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008) (citations omitted). Section 922(g)(1) does not conflict with this principle because it provides express notice that it bars the possession of a firearm by any person who has previously been convicted of a crime punishable by more than a year in prison (or of certain misdemeanors as specifically defined). The Third Circuit's narrow holding in *Range* regarding

**BY THE COURT:**

/s/ *Nitza I. Quiñones Alejandro*
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

---

a particular set of facts does not undermine the clarity of the statute.  *See id.* (noting that "the mere fact that close cases can be envisioned" does not render a statute vague).  Moreover, Defendant's argument regarding the scope of the statute following *Range* is clearly undermined by the almost unanimous treatment of this issue in the Third Circuit after *Range*.  As such, § 922(g)(1) is not unconstitutionally vague.

Lastly, to preserve the argument, Defendant argues that the prohibition in § 922(g)(1) of possession by a felon of a firearm that has traveled in interstate commerce violates the Commerce Clause, as it exceeds Congress' authority to regulate interstate commerce.  However, as Defendant seems to acknowledge, the law forecloses this argument and, therefore, this argument does not support dismissal of the indictment. *See United States v. Singletary*, 268 F.3d 196, 205 (3d Cir. 2001) (rejecting argument that Congress exceeded authority given by Commerce Clause when enacting § 922(g)(1)).

In conclusion, for the reasons set forth, Defendant's motion to dismiss is denied.